**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

C.R. and J.R., individually and as Next Friends,
of JOE R., a minor,

      Plaintiffs,

v

NOVI COMMUNITY SCHOOL DISTRICT,
VERA WILLIAMS, in her individual capacity,
STEPHANIE SCHRINER, in her individual
capacity, ANDREW COMB, in his individual
capacity, and STEVEN MATTHEWS, in his
individual capacity,

      Defendants.

Case No.

Hon.

**COMPLAINT AND JURY DEMAND**

---

VIVIANO, PAGANO & HOWLETT PLLC
By:  Joseph E. Viviano (P60378)
    Joseph C. Pagano (P57107)
Attorneys for Plaintiff
48 S. Main Street, Suite 2
Mt. Clemens, Michigan  48043
(586) 469-1580

---

There is no other action between these parties arising out of the
same transaction or occurrence as alleged in this complaint
pending in this court, nor has any such action been previously filed
and dismissed or transferred after having been assigned to a judge.

**COMPLAINT AND JURY DEMAND**

Plaintiffs C.R., J.R., and Joe R., for their Complaint against defendants Novi Community

School District (the "Novi School District"), Vera Williams ("Williams"), Stephanie Schriner

("Schriner"), Andrew Comb ("Comb") and Steven Matthews ("Matthews) state as follows:

## THE PARTIES

1.      Plaintiffs C.R. and J.R. (collectively, the "Parents"), the parents and natural guardians of plaintiff Joe R., a minor child, bring this action in their representative capacity as next friends on behalf of Joe R.  The Parents have at all relevant times resided in Oakland County, Michigan.  The Parents are plaintiffs as to Count II (Title IX Retaliation) and Count VIII (Intentional Infliction of Emotional Distress).

2.      Plaintiff Joe R. ("Joe") is currently 13 years old and at all relevant times, has resided with his Parents in Oakland County, Michigan.  Plaintiffs are identified by their initials to protect Joe's privacy in light of the sensitive nature of the subject matter of this Complaint. Other minor students are also identified by their initials.  The identities of the Parents, Joe, and the other minor students are well known to the Defendants.

3.      Defendant Novi School District is a provider of public education under Michigan law, incorporated under the laws of the State of Michigan, with the capacity to sue and be sued. The Novi School District is a recipient of federal funding.

4.      Defendant Williams is an individual residing at 36836 Brittany Hill Drive, Farmington Hills, Michigan.

5.      Williams is a certified special education teacher employed by the Novi School District and was Joe's special education math instructor at Novi Middle School ("NMS") during the 2013-14 school year.

6.      Defendant Schriner is an individual residing at 16302 Winchester Drive, Northville, Wayne County, Michigan.

7.      Schriner has been the Principal of NMS from 2011 – present.  As principal, Schriner was charged with the administration of NMS.

8.      Defendant Comb is an individual residing at 53596 Valleywood Drive, #4, South Lyon, Michigan.

9.      Comb has been the Assistant Principal of NMS from 2013 - present.

10.     Defendant Matthews is an individual residing at 11726 Woodspointe Drive, Grand Ledge, Eaton County, Michigan.

11.     Matthews has been the Superintendent of the Novi School District from 2011 – present.  As superintendent, Matthews is charged with executive oversight and administration of the Novi School District.  His duties include, without limitation, implementation of Novi School District policies and procedures.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over all of the defendants.

13.     This Court has subject matter jurisdiction over Counts I – V of this Complaint under 28 U.S.C. §1331 because they arise under federal law and raise federal questions.  The Court also has jurisdiction under 28 U.S.C. §1343(a)(3).

14.     This Court has supplemental jurisdiction over Counts VI – IX of this Complaint under 28 U.S.C. §1367.

15.     Venue is proper under 28 U.S.C. §1391(b).

## FACTUAL ALLEGATIONS

16.     The Novi School District operates eight schools, including NMS, and serves over 6,000 students.

17.     NMS is located at 49000 W. 11 Mile Road, Novi, Michigan.

18.     NMS serves approximately 1,056 seventh and eighth graders.

19.     Joe attended Novi schools from kindergarten – seventh grade and attended NMS during the 2013-14 school year.

20.     Joe is disabled.  He has Autism Spectrum Disorder.

21.     As confirmed by Novi School District testing, Joe suffers from significant impairments and developmental delays in language, communication, comprehension, higher level thinking, and social understanding.

22.     Joe has had an Individualized Education Program (IEP) through the Novi School District since kindergarten.

23.     Joe has struggled with great determination to overcome and manage his disabilities, spending hours of extra time on homework on a nightly basis and completing countless hours of disability-related therapy since his early childhood.

24.     His November 2, 2010 Novi School Social Work Annual Report states that "his motivation to learn and grow socially is inspiring."

25.     Based on Novi School District testing, Joe has the communication abilities and maturity level of a much younger child.

26.     Joe is known as a "rule follower" and a "truth-teller," who is not deceitful and lacks the ability to be deceitful.

27.     Like many ASD students, Joe was susceptible to bullying, manipulation, and intimidation.

28.     The Novi School District was, at all relevant times, aware that Joe had been bullied on multiple occasions in the past.  For example, at the beginning of the 2013-14 school year, the Parents notified NMS of long term, systematic bullying of Joe by a student, M.G.

29.     NMS investigated and substantiated the Parents' allegations.

30. In or about September 2013, Joe was targeted by NMS student J.J.

31. J.J. is approximately one foot taller and one hundred pounds heavier than Joe.

32. Upon information and belief, J.J. has an IEP through the Novi Schools due to emotional impairments.

33. J.J. was abandoned by both parents at or around the time of his birth and has been raised by his grandmother.

34. J.J. has been on medication and in counseling for behavioral problems for years.

35. J.J. suffers from Attention Deficit Hyperactivity Disorder and Unspecified Mood Disorder.

36. J.J. spent approximately ten days receiving in-patient services at Havenwyck Hospital, a psychiatric hospital, in 2011.  According to the Havenwyck website, its in-patient services are for adolescents who "[p]resent a danger to themselves or others."

37. From public social media accounts and websites, it is evident that J.J. had regular access to online content of an inappropriate and sexually explicit nature at all relevant times.

38. At all relevant times, the Novi School District and the individual defendants knew that J.J. posed a threat to other students, including Joe.

39. In January or February 2014, NMS was made aware that J.J. was sexually harassing another special needs student, B.S.

40. B.S. and her parents notified NMS that J.J. had asked B.S. to be his girlfriend and that when she refused, J.J. became aggressive and threatening, calling her "bitch" and other obscenities verbally and by text message and menacing her at school.

41. Upon information and belief, J.J. has a long record of disciplinary issues in the Novi School District.

42.     The Novi School District was well aware of J.J.'s history and propensities, including the contemporaneous misconduct involving B.S., at all relevant times, but it was deliberately indifferent to this information and Joe's welfare, without limitation, when it repeatedly placed Joe alone in a small room with J.J. during class time; when it ignored multiple improper touching incidents; when it disregarded known, relevant information in determining J.J.'s culpability; and when it neglected to share all of this information with the Parents.

43.     The Novi School District has failed to take appropriate disciplinary measures related to J.J. or to impose serious disciplinary consequences on him.

44.     J.J.'s name appears on over 15 police incident reports since 2011, the details of some of which are currently unknown.

45.     On April 23, 2014, a criminal complaint was filed against J.J. for stealing his great-grandmother's credit card and purchasing numerous items.

46.     On June 24, 2014, a criminal complaint was filed against J.J. for picking his grandmother up and throwing her to the ground and holding her there.

47.     On August 27, 2014, J.J. had another physical confrontation with his grandmother, and she was forced to use pepper spray on him.

48.     J.J. began the 2014-15 school year at NMS, but based on his uncontrollable, assaultive behavior, the Oakland County Circuit Court has placed J.J. in Children's Village juvenile detention facility pending disposition of his criminal matters.

49.     Beginning in September 2013 and continuing until February 26, 2014, through intimidation, threats, coercion, grooming, and manipulation, J.J. repeatedly and systematically sexually abused Joe during classes at NMS.

50.     Specifically, JJ touched Joe's groin area and penis above and below his clothes, forced Joe to engage in similar conduct, and engaged in other explicit sexual misconduct and sexually assaultive behaviors such as lying on top of Joe, pinning Joe to the ground, and forcing Joe to sit on him in a bathroom stall.

51.     J.J. took advantage of Joe's disabilities and impairments in coercing Joe to do what J.J. wanted.

52.     J.J. threatened Joe physically; made fun of his impairments; and bullied him by doing and threatening things like dumping the contents of his pencil case, getting other students to throw things at him and tease him, and telling him that he could get their teachers to give Joe extra homework (something that, due to his disabilities, Joe believed and which caused him to panic and have severe anxiety).

53.     Joe was confused by what was occurring and was terrified of J.J.

54.     J.J. threatened Joe and warned him not to tell anyone what was occurring.

55.     The Parents later learned that Joe had been experiencing constant nightmares and suicidal thoughts.

56.     The Parents later learned that Joe had fantasized about running away from school to escape J.J.

57.     The incidents of sexual abuse occurred on multiple occasions during Stacey Becker's special education English Language Arts class, on a virtually daily basis during defendant Williams' special education Math class, and on at least one occasion during Academic 20.

58.     The Parents knew nothing about any of this until they were contacted by NMS Assistant Principal Comb on February 27, 2014.

59.     Subsequent to that time, the Parents learned that at least five different Novi Middle School staff members witnessed or were aware of inappropriate touching between J.J. and Joe during class time between September 2013 – February 2014 but never informed the Parents or gave them the opportunity to protect their son.

60.     Joe and J.J. were admonished on several occasions by school staff about holding hands and "touching body parts" between September 2013 – February 2014.

61.     School Social Worker Nicole Colone was aware that J.J. and Joe had been seen holding hands and touching body parts in class by more than one teacher and had been told by their teachers that this was not permitted.  Colone had also spoken to the two boys about inappropriate touching of body parts in class.

62.     Defendant Schriner was likewise aware of multiple improper touching incidents.

63.     Special Education English teacher Stacey Becker had seen J.J. and Joe holding hands on two occasions in her class and physically separated them on both occasions.

64.     Special Education Math teacher Williams saw J.J. inappropriately touch Joe in September 2013 and admonished him.

65.     She then allegedly saw Joe touch J.J. in February 2014 and was disturbed enough to seek the assistance of Colone.

66.     Academic 20 teacher Margaret Sheeran saw J.J. and Joe holding hands during class.

67.     Under numerous Novi School District written policies, including those set forth in each student's school-issued planner and Novi Community School District Bylaws and Policies 2112, 5780, and 9250, every one of these improper touching incidents should have generated a parental contact, but there was no such parental contact.

68.     If the Novi School District had notified the Parents when it first learned of this behavior, Joe would have been spared months of molestation, abuse, and terror.

69.     Further, Novi School District personnel had every reason to know that their prior efforts to stop the misconduct were ineffectual, as the touching incidents continued after each admonishment.

70.     As a prime example of the ineffectual nature of these interventions, on February 25, 2014, Williams sought the help of Colone in dealing with a touching incident that had occurred in Math class that day.

71.     Colone again admonished J.J. and Joe on February 26, 2014.

72.     Later that same day, on February 26, 2014, the English class sexual abuse incident that brought everything to light occurred.

73.     On or about February 13, 2014, Joe tearfully asked Becker to stop J.J. from "conquering" him.

74.     Becker took no steps to assist him and did not notify his parents.

75.     The first notification by NMS to the Parents regarding the improper touching occurred on February 27, 2014, when Assistant Principal Comb called J.R. and told her that there had been an incident in special education English class with a substitute teacher, Jean Solomon.

76.     Consistent with the policy and established practice of the Novi School District, the special education English class took place in a classroom that is much smaller than a general education classroom.

77.     The special education English class had only four students.

78.     During the February 26, 2014 English class, J.J. touched Joe's groin area for over four minutes, while another student, J.P., videotaped the entire incident.

79.     Based on the small size of the classroom, the fact that the incident lasted at least four minutes, and the fact that three out of four students were involved in the incident, upon information and belief, Solomon saw what was happening and took no steps to stop it.

80.     Alternatively, at the very minimum, Solomon acted with reckless disregard and was grossly derelict in her duties.

81.     NMS claimed it was unaware of the incident until the following day, when students were passing around the video.

82.     Upon information and belief, NMS confiscated all of the cell phones with the video, or any portion of it, and placed them in a school safe.

83.     Incredibly, Schriner and Comb then required J.P. to delete the only complete copy of the video, which contained material evidence of a criminal act, in their presence, without providing it to the police or the Parents.

84.     This destruction and spoliation of material evidence requires the presumption that the video evidence supports Joe's allegations.

85.     NMS notified the Parents that it would not be inviting back Solomon as a substitute teacher, but upon information and belief, she continues to be certified as a substitute teacher in the Novi School District.

86.     Solomon did not return multiple calls from the Novi Police and has likewise failed to return numerous messages from the Parents' investigator.

87.     J.P. advised Schriner that he had taken the video because kids on his bus had accused him of lying when he had told them that this type of contact had been occurring during English class.

88.     This statement gave Schriner notice that there had been other incidents of sexual misconduct during English class, but neither Schriner nor any other person at NMS or the Novi School District followed up on this statement or investigated whether other similar incidents had occurred in English class.

89.     J.P. later advised the Parents' investigator that he has seen the exact same thing happening during Becker's English class on multiple prior occasions.

90.     During their investigation of the February 26 incident, Schriner and Comb learned that J.J. had told Joe, "Let's do that thing we do" prior to the incident, and according to Comb, Joe explained to Comb that this meant "body parts touching other body parts."

91.     These statements gave Schriner, Comb, and NMS additional notice that the February 26 incident was not an isolated occurrence, but neither they nor any other representative of the Novi School District took any steps to investigate this statement or other incidents.

92.     Joe told Comb that the touching made him "uncomfortable."

93.     Without following up on the statement or doing any additional investigation, Comb ridiculously concluded that Joe must have meant he was uncomfortable because he and J.J. had been caught.

94.     Upon discussion with Joe, the Parents learned that virtually every day during Williams' 4-student, special education Math class, Williams had placed J.J. and Joe, alone and with no adult supervision, in a small office connected to the Math classroom (which was itself substantially smaller than a general education classroom), where J.J. repeatedly sexually abused Joe over a period of several months.

95. The Parents further learned that, on at least one occasion during Math class, J.J. and Joe had exited the Math office through a back door leading directly to the hallway, during Math class, and had gone to a bathroom where J.J. sexually assaulted Joe.

96. The Parents further learned that Williams used the office to warehouse special education students and had strict rules that students had to be quiet and that she could not be disturbed or spoken to during class, as she worked at her computer.

97. The layout of Williams' Math classroom and the adjoining office are fully consistent with and corroborate Joe's allegations.

98. The Math class office is a *de facto* seclusion room (the "Seclusion Room") and is subject to specific rules under Michigan and federal law.

99. Such regulations require that the Seclusion Room only be used under "emergency" circumstances, that any students placed in it be under "continuous observation," and that it not be used for the "convenience of staff" or as a "substitute for an educational program."

100. Williams' and the Novi School District's misuse of the Seclusion Room violated all of these rules.

101. Under its established custom, policy, and practice, the Novi School District secluded and separated out special needs children in the Seclusion Room and other unusually small class rooms.

102. This custom, policy, and practice was known to, condoned by, and executed by, Matthews, Schriner, Comb, and Williams.

103. The Novi School District outfitted the Seclusion Room with desks and computers and otherwise directed its use for special education students.

12

104.    Upon information and belief, Matthews, Schriner, and Comb knew that Williams was placing Joe and J.J. into the Seclusion Room during class time.

105.    The Parents filed a police report on February 28, 2014 and, among other things, notified the Novi Police of the serial molestation of Joe during Math class.

106.    The Novi Police provided contemporaneous notice of the police report to NMS.

107.    After not initially punishing Joe for the English class incident, after it became aware of the police report, NMS suspended Joe for the English class incident.

108.    The Novi Police conducted a cursory investigation that was focused almost solely on the English class incident, before declining to recommend charges.

109.    The Novi Police's investigation was hampered by misstatements of Novi School District personnel to the police and the Novi School District's destruction of material evidence.

110.    The Novi Police advised the Parents that all the prosecutor would see was two special needs students touching each other and that Joe could also be prosecuted if they pushed the matter.

111.    The Novi Police did not conduct any meaningful investigation of Joe's Math class allegations.

112.    Even after the Parents provided heart-wrenching, detailed accounts of what happened to Joe in a March 7, 2014 letter, a March 12, 2014 e-mail, and at a March 18 meeting with Matthews and Schriner, on March 21, 2014, Schriner advised the Parents that NMS had been "cleared to investigate" by the Novi Police but could not investigate what happened in Math class without "specific information" from the Parents.

113.    This statement was an admission that, as of March 21, 2014, the Novi School District had conducted no investigation of the Math class incidents.

114.    Under Title IX and Office of Civil Rights guidance, a school district is not permitted to use the existence of a police investigation as an excuse to delay or fail to perform its own independent investigation or as an excuse for failure to take steps to prevent recurrence of sexual abuse.

115.    Under Title IX and Office of Civil Rights guidance, a school district is required to conduct a prompt, thorough, and impartial investigation of allegations of sexual abuse, notwithstanding the existence of a police investigation.

116.    On March 31, 2014, ten days later, without conducting any investigation, Schriner sent an e-mail to the Parents callously notifying them that the Novi School District's "investigation did not reveal any evidence that Joe has been subjected to repeated sexual molestation as you allege."

117.    The Novi School District took no disciplinary actions, issued no sanctions, and offered Joe no remedial action related to the Math class incidents.

118.    The only step the Novi Police or the Novi School District took was briefly to question Williams, who denied that J.J. and Joe had _ever_ been in the Math office together on even a single occasion.

119.    The Novi Police and Novi School District closed their "investigations" of Joe's allegations based on this statement.

120.    At no time up until the present date has the School District investigated the Math class allegations or done anything other than blindly accept Williams' unsupported, demonstrably false statement that J.J. and Joe were never in the Math office together.

121.    Based solely on Williams' statement, Schriner, Comb, Matthews, and the Novi School District concluded that Joe was lying about what occurred in Math class.

122.     Rather than properly investigate the systematic sexual abuse of a special needs student occurring in its classrooms, shortly after it became aware of Joe's police report, the School District <u>suspended</u> Joe for his involvement in the February 26, 2014 incident.

123.     While the suspension was later removed from Joe's record after the Parents retained legal counsel and demanded that it be removed, the Novi School District still maintains an electronic record of "inappropriate sexual contact" under Joe's Unique Identification Code.

124.     At Joe's April 2014 IEP, school staff, including Director of Student Services Shailee Patel, coldly told the Parents that they were proceeding on the basis of "two different versions of the facts," with the Parents believing Joe and the School District believing Williams.

125.     Patel also told the Parents that the Math office was "never really used for students" and was "used for storage most of the school year" and repeatedly suggested that Joe had been a "willing participant" in any sexual contact.

126.     Williams' statements to the Novi Police regarding use of the Math office were knowingly and demonstrably false.

127.     Neither the Novi Police nor anyone from the Novi School District interviewed the other students in Math class regarding Joe's Math class allegations.

128.     The Math class allegations are not even mentioned in the School Incident Report, which was requested by the Parents on March 7 but not provided until April 22.

129.     The Math class allegations are barely mentioned in the Novi Police Report, which is almost exclusively about the February 26, 2014 English class incident.

130.     The Parents' investigator interviewed J.J. and students Ja.P. and M.L. regarding Math class.

131.    These three students, with Joe constitute all of the students who were in Math class from the beginning of the school year through February 26, 2014.

132.    Like Joe, J.J. stated that Williams placed J.J. and Joe into the office <u>nearly every day</u>.

133.    J.J. also admitted that inappropriate sexual contact occurred between him and Joe nearly every day.

134.    J.J. also made clear that the Novi Police had not bothered to ask him virtually anything about Math class.

135.    The Novi School District also never bothered to speak to J.J. about Math class.

136.    Another student, Ja.P., also confirmed that Williams routinely placed J.J. and Joe into the Math office; he was aware that there was improper touching between the two; and he was aware that Joe was afraid of J.J.

137.    Another student, M.L., was aware of Williams placing Joe and J.J. into the Math office on "one or two" occasions, but he could not say more because he put his head down and slept every single day in Math class, yet another indication of Williams' total lack of supervision.

138.    All of the students in Math class from the beginning of the year contradicted Williams' claim that J.J. and Joe were <u>never</u> in the Math office together.

139.    For his safety, based on the strong recommendation of his therapist and the total lack of any acknowledgement of what had occurred by the Novi School District, let alone remedial action, the Parents did not return Joe to NMS after February 27, 2014.

140.    During March and April 2014, while undertaking no investigation of Joe's allegations or taking any disciplinary action against J.J. related to them or implementing any

safety measures, Schriner, Comb, Matthews, and Patel repeatedly pressured the Parents to return Joe to school and to classes with J.J.

141.    During March 2014, while undertaking no investigation of Joe's allegations or taking any disciplinary action against J.J. related to them or implementing any safety measures, Schriner, Comb, and Matthews repeatedly assured the Parents that NMS could keep Joe safe.

142.    Instead of investigating his allegations, the School District retaliated against Joe for making the allegations by suspending Joe, threatening the Parents that an investigation could lead to additional punishment of Joe, and marking Joe as "unexcused absent."

143.    At a March 4 meeting with Comb, a March 18 meeting with Matthews and Schriner, at Joe's April 2014 IEP, and by reviewing the Incident Report and Police Report, the Parents learned, among other things:

> a.    The School District provided no training to Comb or Schriner regarding autism or communicating with an autistic child.
>
> b.    As a matter of policy, the School District did not consider Joe's autism, communication difficulties, lack of social understanding, and developmental delays in determining what happened or what to do about it.  In fact, Schriner crudely told the Parents that Joe, who has undergone countless hours of disability-related therapy since early childhood and whose IEP sets forth his social deficits and developmental delays, "is not any more awkward than any other middle-schooler."
>
> c.    As a matter of policy, the School District did not consider the disciplinary histories and past behavior of J.J. or Joe in determining what happened or what to do about it.

17

d.  Although it clearly violates the School District's written policies regarding parental contact and parent rights, and although Williams, Becker, and Colone all admonished the activity, Schriner, Matthews, and Comb defended the failure of the School District to notify the Parents regarding the numerous known, in-class touching incidents with the superficial and completely beside-the-point observation that the school cannot "judge sexual orientation."

e.  Comb acknowledged that he had received no training on recognizing the signs of sexual abuse.  Based on their statements, it is apparent that Matthews, Schriner, Williams, and the others likewise had no such training or that any such training was woefully inadequate.

f.  The School District reached the bizarre conclusion that Joe, a 13-year-old autistic child who had been terrorized by the far larger J.J. for months, "consented" to the English class touching.

g.  In a series of coordinated statements, Comb, Schriner, and Williams tried to bolster their strange "consent" theory by claiming that Joe was the kind of student who "spoke up" when something was wrong, absurdly implying that his failure to speak up meant that he "welcomed" the touching.  Schriner and Comb made these statements despite the fact that they had each had only one interaction with Joe prior to this incident and did not know him at all.

144.  Throughout these discussions, the Parents expressed their concerns that NMS had not made proper accommodations for Joe's disabilities and delays, did not understand them, and were making no provision in their "investigation" for them.

145.    As a matter of Novi School District established custom and practice, Joe did not attend his weekly sessions with School Social Worker Colone by himself.  J.J. was there with him.

146.    As a matter of Novi School District policy, as recited in Novi Community School District Policy and Bylaw 9250, the Novi School District has "in loco parentis" duties and obligations:   "With regard to student behavior, during school hours, the Board, through its administrators, acts in loco parentis or in the place of the parents."

147.    As a matter of Novi School District established custom and practice the Novi School District places together in special education classes children who are emotionally impaired and likely to act out with students on the autism spectrum who are likely to be bullied and harassed.

148.    School District personnel, including Patel, have intentionally blocked, delayed, and failed to comply with the Parents' lawful requests for information in Joe's Novi School District file.

149.    Due to the conduct described herein, school became an unsafe and hostile environment for Joe.  He was afraid to go to school and has suffered from suicidal thoughts, self-hatred, fright and shock, denial of social pleasures and enjoyments, shame, feelings of despair, helplessness, isolation, dislocation, and severe anxiety.

150.    Joe has been in weekly therapy with Marie-Therese Hocott since March 2014.

151.    The Parents have incurred and will incur medical expenses related to the care of Joe and the Parents.

152.    Ms. Hocott reports that:

    a.    Joe is angry, anxious, afraid, and confused about what happened.

b.   Joe sees J.J. as a perpetrator who "tricked and threatened him."

c.   Joe was "disgusted" by the touching.

d.   Joe was subjected to threats and intimidation by J.J. and was and remains terrified of J.J. to this day, even worrying that he might walk through the door during therapy or otherwise show up unexpectedly in his life.

e.   While this was happening, Joe would sit in his bed afraid to close his eyes because he was plagued by constant nightmares.

f.   Joe felt trapped, helpless, and without hope.

153.   Due to the Novi School District's superficial rejection of his allegations; the absence of any sanctions, disciplinary measures, or remedial measures related to the Math class incidents; the ongoing danger to his safety; and the prospect of being forced to attended one or more classes with J.J., Joe was forced to leave NMS and currently attends private school.

## COUNT I:  TITLE IX, 20 U.S.C. §1681, *et seq* (Novi School District)

154.   Plaintiffs incorporate the foregoing allegations.

155.   The sexual harassment and abuse of Joe was so severe, pervasive, and objectively offensive that it could be said to deprive Joe of access to the educational opportunities or benefits provided by NMS.

156.   Responsible persons within the Novi School District had actual knowledge of the sexual harassment, without limitation, as follows:

a.   The Novi School District had actual knowledge of J.J.'s propensity and likelihood to commit acts of aggression and abuse.

b.   The Novi School District had actual knowledge of numerous incidents of

20

improper "touching of body parts" and hand-holding involving Joe and J.J.

c. The Novi School District had actual knowledge of the videotaped English class incident and other incidents of sexual abuse in English class.

d. The Novi School District had actual knowledge of the serial molestation and abuse of Joe during Math class and on other occasions during classes and in the school building.

157.   The Novi School District was deliberately indifferent to the sexual harassment and abuse of Joe based, without limitation, on the following:

a. The Novi School District's failure to appropriately train its responsible employees regarding how to recognize signs of sexual abuse and how to investigate and how to address allegations of sexual abuse.

b. The Novi School District's failure to appropriately train its employees regarding how to recognize signs of sexual abuse of a special needs minor and how to investigate and how to address allegations of sexual abuse involving a special needs minor.

c. The Novi School District policy of ignoring the history, impairments, and propensities of students when investigating allegations of sexual abuse and determining appropriate remedial action.

d. The Novi School District policy of delaying and not conducting investigations of allegations of sexual abuse during police investigations and deferring to police investigations in violation of its independent duties under Title IX.

e.  The Novi School District's failure to take effective measures to stop the "touching of body parts" and hand-holding incidents that were known to its responsible employees.

f.  The Novi School District's failure to notify the Parents regarding the "touching of body parts" and hand-holding incidents that were known to its responsible employees, in violation of Novi School District policy regarding parental contact and communication.

g.  The Novi School District's failure to effectively monitor and supervise J.J., despite its knowledge of his propensity and likelihood to commit acts of aggression and abuse.

h.  The Novi School District's destruction of material evidence.

i.  The Novi School District's incredibly inappropriate attempt to inject the issues of "consent" and "failure to speak up" into its investigation of the February 26, 2014 English class incident.

j.  The standing by and doing nothing of Novi School District substitute teacher Jean Solomon, while Joe was sexually abused in her presence, while another student videotaped the incident.

k.  The Novi School District's suspension of Joe and blaming of the victim.

l.  The Novi School District's failure to follow up on obvious leads regarding other instances of sexual abuse, such as, without limitation, J.P.'s statement regarding prior similar acts in English class and J.J.'s statement, "let's do that thing we do."

m.  The Novi School District's policy and practice of using undersized classrooms and the Seclusion Room for special needs students in violation of Michigan and federal law and regulations.

n.  The Novi School District's placement of Joe with J.J. in the Seclusion Room, without supervision, despite its knowledge of J.J.'s propensities.

o.  The Novi School District's failure to conduct any investigation regarding Joe's allegations of serial molestation in Math class and allegations regarding Academic 20.

p.  The fact that Novi School District Title IX Coordinator R.J. Weber, though he was notified of Joe's allegations of systemic sexual abuse on March 7, 2014, at the latest, and though he is charged by federal law with a duty to investigate, did nothing whatsoever to investigate Joe's allegations.

q.  The pressuring by Schriner, Comb, Matthews, and Patel of Joe to return to NMS and the marking of Joe's absences as "unexcused," despite the lack of investigation of his allegations and the clear and ongoing danger that J.J. posed to Joe.

r.  Schriner's claim that the "district * * * investigation into this matter is now complete" and statement that "the investigation did not reveal any evidence that Joe has been subjected to repeated sexual molestation as you allege" despite the lack of investigation of his allegations.

s.  The misstatements of Novi School District employee Williams to the Novi Police.

t.  The Novi School District's failure to take any disciplinary or remedial measures regarding the Math class incidents and failure to take any effective or appropriate disciplinary or remedial measures of any kind.

u.  The Novi School District's delay, improper redaction, and failure to comply with its duties to respond to the Parents' legitimate requests for information and documentation to which they are entitled under Michigan law and Novi School District policy.

158.  Based on the foregoing, the Novi School District has violated Title IX and caused substantial damages to Joe as alleged herein, including without limitation severe and permanent psychological damage, physical harm, and emotional distress.

WHEREFORE, plaintiffs respectfully request that the Court enter Judgment in Joe's favor and against the Novi School District in whatever amount he is determined to be entitled and including compensatory, punitive, and exemplary damages, interest, attorney fees under 42 U.S.C. §1988(b), all costs incurred in this action, and any additional relief the Court deems appropriate.

## COUNT II:  TITLE IX RETALIATION (Novi School District)

159.  Plaintiffs incorporate the foregoing allegations.

160.  By reporting the sexual harassment and abuse of J.J., Joe and the Parents were engaging in a statutorily and constitutionally (including First Amendment, Fifth Amendment, and Fourteenth Amendment) protected activity.

161.  As a result of their advocacy efforts, Joe suffered one or more adverse actions, including without limitation:

    a.  Suspension;

    b.  The threat that investigation of his allegations could lead to additional suspension or punishment;

    c.  Having an "improper sexual contact" notation placed on his electronic file; and,

    d.  Being marked "unexcused absent."

162.    There was a causal link between the protected activity and the adverse actions that give rise to an inference of retaliation.

WHEREFORE, plaintiffs respectfully request that the Court enter Judgment in plaintiffs' favor and against the Novi School District in whatever amount he is determined to be entitled and including compensatory, punitive, and exemplary damages, interest, attorney fees under 42 U.S.C. §1988(b), and all costs incurred in this action, and any additional relief the Court deems appropriate.

### COUNT III: 42 U.S.C. §1983 (Novi School District)

163.    Plaintiffs incorporate the foregoing allegations.

164.    Joe has been subjected to a deprivation of clearly established, constitutionally protected rights, privileges secured by the Constitution of the United States, including:

    a.  His 14th Amendment due process right to liberty, including the right to personal security and bodily integrity and right to be free from fear, harm, and sexual assault of his person in his school;

    b.  His 14th Amendment right to equal protection due to intentional discrimination against Joe based on his membership in a protected class, persons who are disabled and suffer from Autism Spectrum Disorder; and,

    c.   His right to a safe, public education in a non-hostile learning environment.

165.   The foregoing rights were clearly established at the time of the violations.

166.   The deprivations were caused by the customs, policies, and established and tolerated practices of the Novi School District, acting under color of its statutory and legal authority, including without limitation:

    a.   The failure to train NMS personnel regarding how to recognize signs of sexual abuse and how to investigate and how to address allegations of sexual abuse.

    b.   The failure to train NMS personnel regarding how to recognize the signs of sexual abuse of a special needs minor and how to investigate and how to address allegations of sexual abuse involving a special needs minor;

    c.   The failure to train NMS personnel regarding how to communicate with autistic children and how to make allowances for communication and social delays.

    d.   The Novi School District policy of ignoring the history, impairments, and propensities of students when investigating improper touching and allegations of sexual abuse and determining appropriate remedial action.

    e.   The Novi School District policy of using substantially smaller classrooms for special education classes, in violation of Rule 340.1733 of the Michigan Administrative Rules for Special Education.

    f.   The Novi School District's established practice and policy of maintaining and using the Seclusion Room for special needs children and separating special needs students from their peers.

g.  The Novi School District established practice and policy of placing emotionally impaired students with a history of acting out in classes with autism spectrum disorder students who are particularly vulnerable to harassment and abuse.

h.  The Novi School District's established practice of not notifying parents regarding improper touching between or among special education students.

i.  The Novi School District's established practice of having group, and not individual, sessions with the school social worker, which meant in this case that Joe attended his sessions with J.J. and never had the opportunity to speak to Colone alone.

j.  The Novi School District policy of deferring investigation of sexual abuse until police investigation is complete, in violation of federal Title IX guidelines and requirements.

k.  The established practice of the School District's Title IX coordinator in failing to investigate detailed allegations of sexual abuse.

l.  The Novi School District's established custom and practice of failing to enforce its own policies and procedures regarding sexual harassment and bullying.

167.  The Novi School District stands in a special relationship to Joe due to its officially adopted *in loco parentis* responsibilities and Joe's known disabilities and need for special consideration and protection.

168.  The Novi School District is responsible for the deprivations under the state-created danger theory because its official policies and use of the Seclusion Room for special needs children and other policies increased the danger and risk that Joe would be sexually abused.

169.    The Novi School District took one or more affirmative act that created or increased the risk of harm to Joe, as alleged herein, including without limitation, maintaining, outfitting, and using a Seclusion Room in the special education Math classroom, with deliberate indifference to Joe's safety and welfare, and thereby giving J.J. repeated opportunities to sexually assault Joe during class time and creating a special danger to Joe, a special education student with autism spectrum disorder, as distinguished from the public at large.

170.    The foregoing violations of 42 U.S.C. §1983 caused substantial damages to Joe as alleged herein, including without limitation severe and permanent psychological damage, physical harm, and emotional distress.

WHEREFORE, plaintiffs respectfully request that the Court enter Judgment in Joe's favor and against the Novi School District in whatever amount he is determined to be entitled and including compensatory, punitive, and exemplary damages, interest, attorney fees under 42 U.S.C. §1988(b), and all costs incurred in this action, and any additional relief the Court deems appropriate.

## COUNT IV: 42 U.S.C. §1983 (Williams, Schriner, Comb, Matthews (collectively the "Individual Defendants" in their Individual Capacities)

171.    Plaintiffs incorporate the foregoing allegations

172.    Joe has been subjected to a deprivation of constitutionally protected rights, privileges secured by the Constitution of the United States, including his:

   a.    His 14th Amendment due process right to  liberty, including the right to personal security and bodily integrity and right to be free from fear, harm, and sexual assault of his person in his school;

    b.  His 14th Amendment right to equal protection due to intentional discrimination against Joe based on his membership in a protected class, persons who are disabled and suffer from Autism Spectrum Disorder; and,

    c.  His right to a safe, public education in a non-hostile learning environment.

173.    The foregoing rights were clearly established at the time of the violations.

174.    The Individual Defendants directly participated in and/or knowingly acquiesced in the deprivations of Joe's constitutional rights.

175.    Williams, without limitation:

    a.  With knowledge that J.J. and Joe had been involved in improper touching during class, repeatedly placed J.J. and Joe in the Seclusion Room together and failed to supervise them.

    b.  With knowledge that J. J. and Joe had been involved in improper touching during class, failed to notify the Parents.

    c.  With knowledge of J.J.'s propensities and Joe's disabilities repeatedly placed J.J. and Joe in the Seclusion Room together and failed to supervise them.

    d.  Used the Seclusion Room, which is a tiny fraction of the size of a regular education classroom, to warehouse Joe and as a substitute for proper instruction, in violation of applicable regulations.

    e.  Deliberately misled the Novi Police investigation of the abuse with the patently false claims that she rarely used the Seclusion Room and that Joe and J.J. were never placed in the Seclusion Room together.

176.    Matthews, without limitation:

a.  Directed the placement of special education students in substantially smaller classrooms and work areas than general education students, including the Seclusion Room, in violation of applicable regulations.

b.  With knowledge that Joe had been improperly touched on several occasions during English class, conducted no investigation beyond the February 26, 2014 incident.

c.  Delayed the investigation of Joe's allegations in violation of federal guidelines.

d.  With knowledge that Joe had been improperly touched on a repeated basis during Math class, undertook no investigation of the claims and personally pressured Joe to return to classes without any investigation, discipline, or remedial measures.

e.  With knowledge of Joe's disabilities and IEP, intentionally and deliberately ignored Joe's communication delays and social deficits during the Novi School District's "investigation."

f.  Deliberately withheld relevant information known to Matthews and pertinent to the investigation, including J.J.'s sexually aggressive actions towards B.S. approximately one month prior to the February 26 incident and other incidents involving J.J.

g.  Treated Joe's allegations differently than he would have treated similar allegations from a non-disabled student.

h.  Threatened additional punishment if the Parents continued their attempts to get NMS to investigate additional incidents.

    i.  Failed to conduct any investigation of the Math class and other allegations, failed to issue any sanctions or take any disciplinary measures, and failed to take any remedial measures.

    j.  Failed to provide required documentation in response to the Parents' legitimate, lawful requests for information and documentation.

177.  Schriner, without limitation:

    a.  Directed the placement of special education students in substantially smaller classrooms and work areas than general education students, including the Seclusion Room, in violation of applicable regulations.

    b.  With knowledge that J.J. and Joe had been involved in improper touching during classes, failed to notify the Parents and directed her subordinates that such lack of notification was appropriate.

    c.  With knowledge that J.J. and Joe had been involved in improper touching during classes, knowingly acquiesced in and directed the use of the Seclusion Room and undersized classrooms.

    d.  With knowledge that Joe had been improperly touched on several occasions during English class, conducted no investigation beyond the February 26, 2014 incident.

    e.  Directed the suspension of Joe.

    f.  Directed the destruction of material evidence.

    g.  Delayed the investigation of Joe's allegations in violation of federal guidelines.

    h.  With knowledge that Joe had been improperly touched on a repeated basis during Math class, undertook no investigation of the claims; personally pressured Joe to

31

return to classes without any investigation, discipline, or remedial measures; and ten days after admitting that she had conducted no investigation, told the Parents that the "investigation" was over and there was "no evidence" that Joe had been sexually abused.

i.  With knowledge of Joe's disabilities and IEP, intentionally and deliberately ignored Joe's communication delays and social deficits, and informed his parents that she undertook her investigation under the assumption that he was "not any more awkward than any other middle-schooler."

j.  Treated Joe's allegations differently than she would have treated similar allegations from a non-disabled student.

k.  Deliberately withheld relevant information known to her and pertinent to the investigation, including past incidents involving J.J., including J.J.'s sexually aggressive actions towards B.S. approximately one month prior to the February 26 incident.

l.  While withholding pertinent evidence, propagated the false narrative that the February 26, 2014 incident was "consensual" and that Joe would have "spoken up" if something were wrong.

m. Threatened additional punishment if the Parents continued their attempts to get NMS to investigate additional incidents.

n.  Failed to conduct any investigation of the Math class and other allegations, failed to issue any sanctions or take any disciplinary measures, and failed to take any remedial measures.

178.   Comb, without limitation:

a.  With knowledge that J.J. and Joe had been involved in improper touching during classes, failed to notify the Parents and directed his subordinates that such lack of notification was appropriate.

b.  With knowledge that J.J. and Joe had been involved in improper touching during classes, knowingly acquiesced in and directed the use of the Seclusion Room and undersized classrooms.

c.  With knowledge that Joe had been improperly touched on several occasions during English class, conducted no investigation beyond the February 26, 2014 incident.

d.  Directed the suspension of Joe.

e.  Directed the destruction of material evidence.

f.  Delayed the investigation of Joe's allegations in violation of federal guidelines.

g.  With knowledge that Joe had been improperly touched on a repeated basis during Math class, undertook no investigation of the claims and personally pressured Joe to return to classes without any investigation, discipline, or remedial measures.

h.  With knowledge of Joe's disabilities and IEP, intentionally and deliberately ignored Joe's communication delays and social deficits.

i.  Treated Joe's allegations differently than he would have treated similar allegations from a non-disabled student.

j.  Deliberately withheld relevant information known to him and pertinent to the investigation, including past incidents involving J.J., including J.J.'s sexually aggressive actions towards B.S. approximately one month prior to the February 26 incident.

33

k.   While withholding pertinent evidence, propagated the false narrative that the February 26, 2014 incident was "consensual" and that Joe would have "spoken up" if something were wrong.

l.   Failed to conduct any investigation of the Math class and other allegations, failed to issue any sanctions or take any disciplinary measures, and failed to take any remedial measures.

179.   The Individual Defendants stand in a special relationship to Joe due to their *in loco parentis* responsibilities and Joe's known disabilities and need for special consideration and protection.

180.   The Individual Defendants are responsible for the deprivations under the state-created danger theory because its official policies and use of the Seclusion Room for special needs children increased the danger and risk that Joe would be sexually abused.

181.   The Individual Defendants took one or more affirmative act and/or knowingly acquiesced in affirmative acts that created or increased the risk of harm to Joe, as alleged herein, including without limitation, maintaining, outfitting, using, and/or encouraging the use of a Seclusion Room in the special education Math classroom, with deliberate indifference to Joe's safety and welfare, and thereby giving J.J. repeated opportunities to sexually assault Joe during class time and creating a special danger to Joe, a special education student with autism spectrum disorder, as distinguished from the public at large.

182.   The foregoing violations of 42 U.S.C. §1983 caused substantial damages to Joe as alleged herein, including without limitation severe and permanent psychological damage, physical harm, and emotional distress.

WHEREFORE, plaintiffs respectfully request that the Court enter Judgment in Joe's favor and against the Individual Defendants, jointly and severally, in whatever amount he is determined to be entitled and including compensatory, punitive, and exemplary damages, interest, attorney fees under 42 U.S.C. §1988(b), and all costs incurred in this action, and any additional relief the Court deems appropriate.

## COUNT V:  SECTION 504 OF THE REHABILITATION ACT OF 1973/AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. 12101, *et seq*
### (Novi School District)

183.    Plaintiffs incorporate the foregoing allegations.

184.    At all relevant times, Joe was and is disabled within the meaning of the Rehabilitation Act and the Americans with Disabilities Act, which prohibit exclusion from participation from school programs, denial of benefits, or being subject to discrimination on the basis of disability.

185.    Joe has a mental impairment that limits one or more of his major life activities, has a record of such impairment, and is regarded as having such impairment under the law.

186.    At all relevant times, Joe was and is otherwise qualified to participate in the general and special education program of the Novi School District, which accepts federal funding and is subject to the Rehabilitation Act and the Americans with Disabilities Act.

187.    Joe was excluded and is being excluded from participation in the programs by reason of his disability, and the Novi School District denied him equal and fair access to the educational programs, benefits, and opportunities.

188.    The Novi School District's conduct violated several provisions of 28 C.F.R. §35.130(a) and §35.130(b).

189.    Without limitation:

    a.    Joe was required to attend classes in rooms that were far smaller than general education classrooms in violation of applicable regulations.

    b.    Contrary to practices with general education students, Joe was removed from his math class and was placed in the Seclusion Room, separate from his peers, with no teacher instruction and no adult supervision.

    c.    Contrary to practices with general education students, due to his Autism Spectrum Disorder, based on Novi School District Policy, Joe was placed in classes and in the Seclusion Room with an emotionally impaired, far larger student, J.J., who had a history of aggression.

    d.    Contrary to practices with general education students, Joe was removed from student instruction and received no instruction during math class.

    e.    The Novi School District did not treat Joe's allegations in the same manner that it treats similar allegations from non-disabled students.

    f.    The Novi School District provided no training to the responsible parties regarding the sexual abuse of special needs children or the communication issues of autistic children and made no accommodations for Joe's language and social impairments.

190.    Joe was harassed by J.J. based on his disabilities.

191.    The harassment was sufficiently severe or pervasive that it altered the condition of his education and created a hostile and abusive educational environment.

192.    The Novi School District knew about the harassment.

193.    The Novi School District was deliberately indifferent to the harassment and acted in bad faith.

194.    The treatment of Joe was not rationally related to any legitimate governmental purpose.

195.    Joe has been damaged by the discrimination against him based on his disability as alleged herein, including without limitation severe and permanent psychological damage, physical harm, and emotional distress.

WHEREFORE, plaintiffs respectfully request that the Court enter Judgment in Joe's favor and against the Novi School District in whatever amount he is determined to be entitled and including compensatory, punitive, and exemplary damages, interest, and all costs and attorney fees incurred in this action, as provided by statute or otherwise, and any additional relief the Court deems appropriate.

## COUNT VI:  MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT
### (All Defendants)

196.    Plaintiffs incorporate the foregoing allegations.

197.    Defendant Novi School District is a place of accommodation and educational institution under MCL 37.2301.

198.    "Educational institution" is defined to include agents of an educational institution under MCL 37.2401.

199.    Defendants Williams, Schriner, Comb, and Matthews are agents of the Novi School District.

200.    Under MCL 37.2402, an educational institution shall not:

    a. "Discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex.

    b. "Exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms, conditions, or privileges of the institution, because of religion, race, color, national origin, or sex."

201.    J.J. intentionally and repeatedly sexually harassed and abused Joe over a period of several months and thereby created a sexually abusive and discriminatory educational environment.

202.    The sexual abuse of Joe was sufficiently severe, pervasive, and objectively offensive as to systematically deprive Joe of equal access to the educational programs and activities of the Novi School District.

203.    By its actions and omissions, as alleged herein, the Defendants were party to the harassment, knowingly acquiesced in the creation of a hostile educational environment, and failed to take required remedial measures, in violation of the Elliot-Larsen Civil Rights Act.

204.    Joe has been damaged by the sex-based discrimination against him as alleged herein, including without limitation severe and permanent psychological damage, physical harm, and emotional distress.

205.    Due to the Defendants' deliberate indifference and callous disregard, Joe is entitled to exemplary damages.

WHEREFORE, plaintiffs respectfully request that the Court enter Judgment in Joe's favor and against the all Defendants, jointly and severally, in whatever amount he is determined to be entitled and including compensatory and exemplary damages, interest, and all costs and attorney fees incurred in this action, as provided by statute or otherwise, and any additional relief the Court deems appropriate.

## COUNT VII:  MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### (All Defendants)

206.    Plaintiffs incorporate the foregoing allegations.

207.    Defendant Novi School District is a place of accommodation and educational institution under MCL 37.1402.

208.    "Educational institution" is defined to include agents of an educational institution under MCL 37.1401.

209.    Defendants Williams, Schriner, Comb, and Matthews are agents of the Novi School District.

210.    Under MCL 37.1402, an educational institution shall not:

    a.    "Discriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services * * *.

    b.    "Exclude, expel, limit, or otherwise discriminate against an individual * * * enrolled as a student in the terms, conditions, and privileges of the institution, because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution * * *."

211.    Defendants discriminated against Joe and excluded him from participation in the programs by reason of his disability and denied him equal and fair access to the educational programs, benefits, and opportunities.

212.    Joe has been damaged by the discrimination against him based on his disability as alleged herein, including without limitation severe and permanent psychological damage, physical harm, and emotional distress.

213.    Due to the Defendants' deliberate indifference and callous disregard, Joe is entitled to exemplary damages.

WHEREFORE, plaintiffs respectfully requests that the Court enter Judgment in Joe's favor and against all Defendants, jointly and severally, in whatever amount he is determined to be entitled and including compensatory and exemplary damages, interest, attorney fees, and all costs incurred in this action, and any additional relief the Court deems appropriate.

### COUNT VIII:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Matthews, Schriner, Comb, Williams)

214.    Plaintiffs incorporate the foregoing allegations.

215.    The conduct of the Individual Defendants towards the Parents was extreme, outrageous and recklessly and intentionally calculated to cause the Parents extreme emotional distress.

216.    Specifically and without limitation, the Individual Defendants, in an attempt to cover up the sexual abuse of Joe and to avoid liability:

a.   Failed to notify the Parents regarding the repeated improper touching incidents, during class, involving Joe and J.J.

b.   Destroyed material evidence.

c.   Made misrepresentations to the police.

d.   Suspended Joe, the victim of systemic sexual abuse at NMS.

e.   Failed to investigate Joe's allegations, while at the same time telling the Parents the investigation had been "completed."

f.   Knowingly misrepresented to the Parents that there was "no evidence" that the sexual abuse of Joe had occurred.

g.   Told the Parents their special needs, minor son had "consented" to the touching.

h.  Told the Parents that their special needs son, who is autistic and has an IEP and has been through thousands of hours of therapy since early childhood, is "no more awkward" than any other student at NMS.

i.  Repeatedly placed Joe in a Seclusion Room, with J.J., without regard to J.J.'s known propensities and Joe's disability-based vulnerability.

j.  Told the Parents that Joe could be suspended or subject to additional punishment if his allegations were investigated.

k.  In violation of Michigan law and Novi School District policies, delayed production of, or completely failed to produce, or only produced with extensive and improper redactions, material information and records requested by the Parents.

217.  As a direct result of defendants' extreme and outrageous conduct, the Parents have suffered extreme emotional distress necessitating family therapy.

WHEREFORE, plaintiffs respectfully request that the Court enter Judgment in the Parents' favor and against the Individual Defendants, jointly and severally, in whatever amount they are determined to be entitled and including compensatory and exemplary damages, interest, attorney fees, and all costs incurred in this action and any additional relief the Court deems appropriate.

### COUNT IX:  GROSS NEGLIGENCE (Williams)

218.  Plaintiffs incorporate the foregoing allegations.

219.  As his teacher, Williams owed Joe in loco parentis duties and the duty not to act in a grossly negligent manner and to provide for Joe's safety.

41

220.    With full knowledge of J.J.'s propensities and emotional impairments, Joe's vulnerability and disabilities, and past improper touching incidents between Joe and J.J., Williams willfully and wantonly breached her duties by recklessly and repeatedly placing J.J. and Joe alone in the Seclusion Room, without supervision, demonstrating a complete lack of concern for Joe's safety.

221.    Because Williams' conduct constitutes gross negligence, the defense of governmental immunity is not applicable under Michigan law.

222.    As a direct and proximate result of Williams' gross negligence, J.J. repeatedly sexually abused Joe on a daily basis over a period of months.

223.    As a direct and proximate result of Williams' gross negligence, Joe has suffered damages as stated herein, including without limitation severe and permanent psychological damage, physical harm, and emotional distress.

WHEREFORE, plaintiffs respectfully request that the Court enter Judgment in Joe's favor and against the Williams, in whatever amount he is determined to be entitled and including compensatory and exemplary damages, interest, attorney fees, and all costs incurred in this action and any additional relief the Court deems appropriate.

Respectfully submitted,

/s/Joseph E. Viviano
VIVIANO, PAGANO & HOWLETT PLLC
Joseph E. Viviano (P60378)
Attorneys for Plaintiff
48 S. Main Street, Suite 2
Mt. Clemens, Michigan  48043
(586) 469-1580
joe@vivianolaw.com
December 1, 2014                 (P60378)

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims triable to a jury.

Respectfully submitted,

/s/Joseph E. Viviano
VIVIANO, PAGANO & HOWLETT PLLC
Attorneys for Plaintiff
48 S. Main Street, Suite 2
Mt. Clemens, Michigan  48043
(586) 469-1580
joe@vivianolaw.com

December 1, 2014                                    (P60378)

43